IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KAREN FELD,

    Plaintiff,

  v.                                      Civil Action No. 1:09-CV-00479-ESH/AK

KENNETH FELD,

    Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Plaintiff Karen Feld submits this opposition to Defendant Kenneth Feld's motion for a protective order (Doc. 67). Defendant has not met his burden of demonstrating good cause why a protective order must be granted in this case. His has not demonstrated an entitlement to any of the eight categories of order described in Fed. R. Civ. P. 26(c), nor has he alleged specific facts demonstrating that an order is necessary to protect him from "annoyance, embarrassment, oppression, or undue burden or expense." *Id.* Entry of a blanket order requires a specific showing of need. *See Cippollone v. Liggett Group, Inc.,* 822 F.2d 335 (3d Cir.), *cert. denied*, 484 U.S. 976 (1987) (case management needs insufficient basis for protective order; court must consider specific harm to producing party); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988) (even where stipulated protective order requested, district court must independently determine whether "good cause" exists). Defendant's motion does not come close to meeting this requirement.

As a threshold matter, Defendant's counsel did not initiate a conference to resolve this dispute in accordance with Fed. R. Civ. P. 37 and LCvR 7(m). Instead, after undersigned

counsel indicated that Plaintiff had reconsidered and no longer wished to stipulate to a protective order, Defendant filed the within motion.

### I. DEFENDANT HAS FAILED TO CARRY HIS BURDEN OF DEMONSTRATING GOOD CAUSE FOR THE ENTRY OF A PROTECTIVE ORDER IN THIS CASE.

Defendant has made no specific showing of need. Instead, he demonstrates little more than that he wants an order keeping evidence in this case confidential, similar to the orders he has obtained in numerous other litigations where courts have apparently given *pro forma* approval to stipulations reached between or among the parties. Defendant has used those orders to stymie Plaintiff's efforts at discovery, most recently at his deposition where he refused to answer questions on that basis. In this case, the Defendant has demanded a protective order as a condition of his full participation in discovery. Plaintiff objects to the entry of any protective order solely for the convenience of the Defendant.

On April 15, 2010 Defendant served responses to Plaintiff's First Request for Production of Documents. In addition to a series of boilerplate objections, Defendant objected to "producing documents in response to Plaintiff's document requests until a protective order is entered in this case." (Ex. 1 at 4). Thereafter, counsel engaged in several meet and confer phone calls regarding various discovery issues, during which Defendant's counsel promised to provide a draft protective order for review.[1] Defendant admits that undersigned counsel "repeatedly requested a copy" of the draft order, to no avail. (Doc. 67 at 2). By letter dated June 18, 2010, undersigned counsel reminded Defendant's counsel that a draft had not yet been provided and that Kenneth Feld's deposition would not conclude absent seasonable receipt of his documents by the Plaintiff:

---

[1] The parties informally agreed that neither would produce documents in the interim. Thus Plaintiff, who was indifferent as to a protective order, would not be disadvantaged.

> Second, [Kenneth Feld has] declined to produce documents
> pending negotiation of a protective order.  ***Without conceding that
> a protective order is necessary, we will review your draft, which
> you promised to provide shortly.***  Please note that we require
> sufficient time to review the documents in advance of Mr. Feld's
> deposition.  Otherwise, his deposition will be held open pending
> their production.

(Ex. 2 at 2, emphasis added).  When Defendant's deposition began on June 25, 2010, his counsel had yet to deliver the draft protective order or produce any documents.  (Ex. 6 at 12:10-21).

Thus, Defendant's complaint about "surprise" at his deposition, even if it were accurate, is attributable to this unexplained delay in providing the draft protective order as promised.  The primary so-called "surprise document" is a manuscript which on its face is a history of the Feld family and business written "by Kenneth Feld."  (Ex. 3).[2]  ***The manuscript describes the deterioration of Kenneth and Karen Feld's relationship over the course of many years, including a discussion of the event--the publication of a magazine article by Jan Pottker which angered Kenneth Feld and to which he believed Karen had contributed--which led directly to their current state of acrimony, mistrust, and near-total lack of communication.***  (Ex. 3 at 382-83).  It contradicts Kenneth Feld's sworn statements, (Ex. 4 at ¶¶ 9, 10), responses to requests for admission, (*e.g.,* Ex. 5 at 2) and deposition testimony.  (Ex. 6 at 62:19-63:4).  It is beyond serious dispute that the document is relevant based on Judge Huvelle's January 21, 2010 Order in which the Court acknowledged that "the existence of mutual hostility between a trustee and a beneficiary may be grounds for removal…." (Doc. 44 at 1).  *See also id.* at 3, n.5 (noting that *Defendant's* argument regarding the Designee's hostility is as compelling as Plaintiff's

---

[2] Only an attorney would characterize a manuscript apparently written by or on behalf of his client as a "surprise document."  Because the manuscript is several hundred pages long, Plaintiff includes excerpts herein.  At his deposition Kenneth Feld admitted to commissioning such a book to be ghostwritten but denied having read the entire manuscript.

argument regarding Defendant's hostility).  Kenneth Feld has flatly denied any hostility towards his sister and that they have an acrimonious relationship.

At his deposition, counsel instructed Defendant not to answer numerous questions in contravention of Fed. R. Civ.P. 30.  The purported basis of the instructions was a moving target which included protective orders entered in prior state court litigations, confidentiality agreements, and a "thing:"

```
                                    68
19   MR. SIMPSON:  Mr. Oster, there's an order,
20   there's also another thing, I don't even want to
21   characterize it, that has relevance here that we're not
22   going to produce and we can't produce.  He's not going

                                    69
 1   to let him talk about it, he's not going to talk about
 2   it.  If we get to it, I suppose we could produce it
 3   through The Court under seal, but we can't do it.
 4         MR. KIRTLAND:  The thing is confidential.
 5   But I want to --
 6         MR. OSTER:  Let me just understand.  Even
 7   what the thing is is confidential?
 8         MR. SIMPSON:  Yes.  Yes.
```

(Ex. 6 at 68:19-69:8, emphasis added).  No state court order or private confidentiality agreement can preclude a deponent's testifying in a federal lawsuit.[3]  Nevertheless, Defendant's counsel

---

[3] Another of Defendant's counsel recently stated that the "thing" was a confidentiality agreement to which Defendant is a party.

repeatedly instructed Kenneth Feld not to answer questions based on, *inter alia*, protective orders in other litigations.  (*See, e.g.,* Ex. 6 at 64:7-73:6).

As a result of this conduct at Defendant's deposition, along with the fact that after nearly eleven weeks Defendant's counsel had still not provided the promised draft, Karen Feld determined not to stipulate to entry of a protective order.  Consent to such an order could be construed as an acknowledgement of the propriety of the orders which counsel used to instruct Defendant to refuse to answer questions at his deposition.  On August 2, 2010 Plaintiff produced documents to the Defendant and requested that the Defendant produce his documents.  As a courtesy, Plaintiff agreed to treat them as confidential pending the Court's resolution of Defendant's motion for a protective order.  Even though that offer eliminated any potential prejudice to the Defendant, to date he has refused to produce any documents.  (Ex. 7).  Defendant has not indicated what particularized harm will ensue were the documents produced absent a protective order.

Defendant's assertion that Plaintiff intends to disclose information discovered in this case is equally unavailing.  Even if it were true, that a litigant plans to disclose information obtained in discovery is not good cause to enter a protective order.  *See In re Upjohn Co. Antibiotic Cleocin Products Liability Litig.*, 81 F.R.D. 482 (E.D.Mich. 1979). *aff'd* 664 F.2d 114 (6th Cir. 1981) (plaintiff may sell discovery materials to litigants in other actions).  Moreover, the articles concerning the *Shiva* litigation to which Defendant refers in his brief can be traced back to the Defendant himself.  The *Shiva* case became news after the Defendant served a deposition subpoena on a Rabbi who had relocated to New York.  When the Rabbi sought a protective order, sensational statements in the Defendant's brief along with Kenneth Feld's notoriety caught

the attention of the New York *Post* reporter who wrote the initial article.[4]  That reporter contacted undersigned counsel.

Accordingly, Plaintiff respectfully requests that the within motion be denied.

## II. THERE IS NO BASIS TO AWARD EXPENSES TO THE DEFENDANT REGARDLESS OF THE COURT'S DISPOSITION OF THE WITHIN MOTION.

For the reasons stated above Defendant is not entitled to his expenses regardless of the disposition of the within motion.  Counsel has not explained his failure to produce a draft protective order between April 15, 2010, when Defendant served his objection to producing documents absent an order, and July 7, 2010, by which time Plaintiff had determined not to stipulate to a protective order.  Under the totality of the circumstances, imposing a sanction on Plaintiff for not stipulating to an order would be unjust.  *See* Fed. R. Civ.P. 37(a)(5)(A)(iii). After Plaintiff first communicated her disinclination to enter into a stipulated order, Defendant filed the within motion rather than initiate a conference pursuant to Fed. R. Civ. P. 37 and LCvR 7(m) to ascertain if the matter could be resolved without resort to the Court.  That failure is fatal to a claim for expenses.  Fed. R. Civ.P. 26(c)(1) and 37(a)(5)(A)(i).

Moreover, a fair reading of Fed. R. Civ.P. 37(a)(5) indicates that it applies to disputes wherein a party seeks a protective order in response to a discovery request or a party moves to compel discovery over an objection.  Subsection 37(a)(5)(A), on which Defendant relies, applies if the motion is granted "or if the disclosure or requested discovery is provided after the motion is filed…."  A sanction is not permitted where "the opposing party's nondisclosure, response, or objection was substantially justified."  *Id*. at § 37(a)(5)(A)(ii).  There is nothing in Rules 26 and

---

[4] That Plaintiff has indicated an intention to write her memoirs does not equate to any discovery abuse related to the Trust case.

37 which indicates that sanctions must be imposed on a party unwilling to stipulate to a blanket discovery order.

If, notwithstanding the above, the Court is inclined to award expenses, Plaintiff requests the opportunity to be heard on that issue pursuant to Rule 37(a)(5)(A). *See Campbell v. U.S. Dept. of Justice*, 209 F.R.D. 272, 274 (D.D.C. 2002) (before ordering sanction court must afford counsel notice and an opportunity to be heard on the matter).

August 16, 2010    Respectfully submitted,

_____/s/_____
Steven M. Oster
Oster Law Firm
DC Bar No. 376030
1050 17th Street, NW
Suite 700
Washington, DC 20036
Phone: 202 596 5291
Fax: 202 747 5862
steve@osterlawfirm.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing **Opposition to Motion for Protective Order** was electronically filed with the Clerk of the Court using the CM/ECF system, causing a notice of electronic filing to be sent to the following counsel of record:

Joseph T. Small Jr., Esquire
Matthew H. Kirtland, Esquire
Rena Scheinkman, Esquire
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

John A.C. Keith, Esquire
William Porter, Esquire
BLANKINGSHIP & KEITH PC
4020 University Drive, Suite 300
Fairfax, VA 22030

August 16, 2010    _____/s/_____
Steven M. Oster