**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KAREN FELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:08-cv-01557-ESH/DAR |
| ) | |
| KENNETH FELD *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| KAREN FELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:09-CV00479-ESH/DAR |
| ) | |
| KENNETH FELD, ) | |
| ) | |
| Defendants. ) | |

**<u>EXHIBIT 2 TO PLAINTIFF'S MOTION</u>**

1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KAREN FELD,                    .    Case No. 1:09-CV-00479
                               .    (ESH)
          Plaintiff,           .
                               .    Washington, D.C.
     v.                        .    August 13, 2010
                               .
KENNETH FELD, ET AL.,          .
                               .
          Defendants.          .
. . . . . . . . . . . . . . .

TELEPHONIC CONFERENCE
BEFORE THE HONORABLE ALAN KAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      Oster Law Firm
                        By:  STEVEN MICHAEL OSTER, ESQ.
                        1050 17th Street, N.W.
                        Suite 700
                        Washington, DC 20036

                        Bonner, Kiernan, Trebach
                        & Crociata, LLP
                        By:  CHRISTOPHER HASSELL, ESQ.
                        1233 20th Street, N.W.
                        Suite 800
                        Washington, DC 22036

For the Defendant:      Fullbright & Jaworski, LLP
                        By:  MATTHEW H. KIRTLAND, ESQ.
                             JOHN SIMPSON, ESQ.
                        801 Pennsylvania Avenue, N.W.
                        Suite 500
                        Washington, DC 20004

Transcribed by:         MR. STEPHEN C. BOWLES

1          (Proceedings commenced at 9:56 a.m.)

2               THE CLERK:  Civil Actions 2008-1557 and 2009-

3     479, <u>Karen Feld v. Kenneth Feld, et al.</u>, in Civil

4     Action 2008-1557, and <u>Karen Feld v. Kenneth Feld</u> in

5     Civil Action 2009-479.

6               Counsel, would you please identify yourselves

7     for the record?

8               This is a telephone conference.

9               MR. OSTER:  Yes, good morning.

10              This is Steven Oster, counsel for the

11    Plaintiff, Karen Feld, in both cases.

12              Also Chris Hassell, co-counsel for Karen Feld

13    in the --

14              MR. OSTER:  1557.

15              MR. HASSELL:  Okay.  Thank you.

16              MR. KIRTLAND:  Good morning.

17              This is Matthew Kirtland with Fullbright &

18    Jaworski for Defendants in both cases, and with me is

19    John Simpson.

20              THE COURT:  Good morning, Counsel.  This is

21    Judge Kay.

22              MR. OSTER:  Good morning, Your Honor.

23              Your Honor, before we begin, if I may, I just

24    -- I've been working out of the house while my wife

25    recuperates, and on short notice I wasn't able to get

1   some help in here, so I may need to excuse myself.   I

2   don't think I will, but if I do, I apologize and I'll

3   make it as brief as possible.

4           THE COURT:  All right.  We understand, Mr.

5   Oster.

6           We set up this status conference for the

7   purpose of ascertaining the availability of Ms. Karen

8   Feld to complete her deposition, and was represented to

9   Defense Counsel and to the Court that Ms. Feld was up

10  in Maine, that she has some medical problems, and the

11  Court requested some notification from her treating

12  physicians as to her condition and what the prognosis

13  was for her to conclude her deposition at the -- and

14  Defense Counsel indicated that they wished to conclude

15  the deposition in the District of Columbia, where the

16  case was filed.

17          And yesterday, the Court received, from Mr.

18  Oster, two -- Well, a letter from the osteopathic

19  doctor or doctor of osteopathy, dated July 9 -- 19,

20  excuse me, 2010, and a follow-up letter, dated August

21  the 11th, 2010, from the same doctor, and similarly, a

22  letter, dated June 28, from a Dr. Steele, also a doctor

23  of osteopathy.

24          According to the treating doctor in Maine, I'm

25  not sure I fully understand the content of that letter

1    -- letters, and I assume, Mr. Kirtland, that you

2    received copies of those communications or those

3    letters from the two osteopaths; is that correct?

4              MR. KIRTLAND:  Yes, Your Honor.

5              THE COURT:  Yes.

6              He sort of indicates that she has -- that she

7    injured herself somewhat recently, that something

8    happened at the -- at an airport, or that the injury

9    that affected her, I guess the left leg, where she has

10   prosthesis in there with respect to her knee.

11             I'm assuming that this was something that

12   occurred after the knee replacement, and that he

13   indicated that she has soft tissue injuries with the

14   possibility or a question of what he phrased it as "an

15   occult bone fracture" which I'm going to assume is a

16   possible or potential hidden bone fracture.

17             Do you know any -- Do you have any better

18   information than that, Mr. Oster, as to what he's

19   referring to on that?

20             MR. OSTER:  Doctor Sendzicki, and, just for

21   the record, it's Bonnie Sendzicki, it's a she, Your

22   Honor.

23             Your Honor --

24             THE COURT:  Oh, excuse me.  She's a she.  I'm

25   sorry.  Yes, indeed.

1      MR. OSTER:  Your Honor is correct, the occult

2  fracture is a possible hairline fracture which, based

3  on the level of pain, that according to Dr. Sendzicki,

4  Ms. Feld is in is a possibility.

5      THE COURT:  But never -- They have not taken

6  an x-ray to ascertain whether there's a hairline

7  fracture?

8      MR. OSTER:  I don't know whether they didn't

9  take an X-ray or whether because it's a hairline

10  fracture, they suspect that there may be a fracture

11  which hasn't shown up on a x-ray.

12      THE COURT:  I see.

13      MR. OSTER:  But the letter and the diagnosis,

14  or the possible diagnoses is based on the level of pain

15  Ms. Feld is in, as I understand the letter.

16      THE COURT:  All right.

17      Yes, but that -- That's -- No, I understood

18  that also, and he indicates that she's currently

19  undergoing some therapy, manual treatments for left leg

20  or left hip, a lower back, and her neck injuries.

21      Were these all symptoms that occurred, Mr.

22  Oster, upon her arrival in Maine, or is -- this is what

23  she has as an ongoing series of ailments?

24      MR. OSTER:  Well, she does have an ongoing

25  series of ailments, but my understanding is that these

1    symptoms arose after she left for Maine, you know, --

2              THE COURT:  So what --

3              MR. OSTER:  -- as a result of --

4              THE COURT:  So something happened between her

5    leaving D.C. and arriving in Maine?

6              MR. OSTER:  Yes, Your Honor.

7              THE COURT:  So, in other words, she was

8    involved in an accident of some sort?

9              MR. OSTER:  Yes, Your Honor.  That's correct.

10             THE COURT:  Do you know the nature of that?

11   I mean, did she fall?  Did she have a -- Was it an

12   automobile accident, or what was the nature of it?

13             MR. OSTER:  Your Honor, I wasn't there, but

14   if Your Honor will also note in the letter, the second

15   issue which Ms. Feld faces is traumatic stress related

16   to an incident which occurred with TSA in the airport.

17             THE COURT:  Is that the security people at

18   the airport?

19             MR. OSTER:  That's correct.  That is correct,

20   Your Honor.

21             My understanding is that contrary to Ms.

22   Feld's absolute right under the ADA, they intended to

23   separate and did separate Ms. Feld from her service

24   animal and, as a result, Ms. Feld was extremely upset,

25   and understandably so, in that in the course of Ms.

1  Feld attempting to clarify her condition and her

2  rights, that she was severely injured, and that is the

3  genesis of her current situation.

4            THE COURT:  I see.  All right.

5            And what treatment is she receiving for her

6  anxiety and traumatic stress?

7            MR. OSTER:  My understanding is that she is

8  taking medication on a daily basis and she is

9  undergoing therapy, but beyond that --

10            THE COURT:  I see.  I see.

11            MR. OSTER:  -- I have no specifics, Your

12  Honor.

13            THE COURT:  Is Dr. Sendzicki treating her for

14  her traumatic stress disorder?

15            MR. OSTER:  That's the inference that I draw

16  from the letter, Your Honor.

17            THE COURT:  I see.  So an osteopath is not

18  just a bone specialist, it's -- a bone/muscle

19  specialist, he goes beyond that?  He has mental

20  problems?  They treat that also?  I don't know.  I

21  don't know much about osteopathy, I must tell you.

22            MR. OSTER:  Your Honor, Dr. Sendzicki, in

23  this letter and in her prior letter, referred to an

24  orthopedic specialist who examined Ms. Feld, I believe

25  at the end of July, and so she is seeing a specialist

1   for her musculoskeletal injuries.

2          An osteopath, again, as I understand it, is a

3   physician, such as a medical doctor, who is -- takes

4   more of a holistic approach --

5          THE COURT:  I see.

6          MR. OSTER:  -- to treating his or her

7   patient.

8          THE COURT:  All right.

9          Well, he seems to -- she seems to also

10  suggest a series of treatments that are going to take

11  four to six weeks or what -- In her July letter, July

12  19 letter, she indicates a four to eight week therapy

13  period, which seems to sort of run us through the end

14  of this month, in terms of the therapy that she's been

15  prescribed by the -- by Dr. Sendzicki.

16         Does she contemplate coming back to D.C.

17  towards the end of August, or sometime in September?

18         MR. OSTER:  Yes, Your Honor.  Consistent with

19  your Honor's order earlier in the week, based upon Dr.

20  Sendzicki's letter, and looking at the midrange of the

21  potential length of therapy, unless, you know, she is

22  instructed by her doctor not to travel, then Ms. Feld

23  is planning on making herself available for deposition

24  in the District of Columbia the week of September 27th

25  which, I believe, puts us right at the mid -- the

1    middle of the four to six weeks from today.

2              THE COURT:  All right.

3              MR. OSTER:  Now, in addition to that, as I

4    indicated earlier, and as mentioned in Dr. Sendzicki's

5    letter, Ms. Feld, in good faith, will make herself

6    available immediately, should the Defendant ask her to

7    sit via video conference.

8              In addition, and again, I communicated this

9    to the Defense, again, showing Ms. Feld's good faith

10   and her intent to work around these very severe

11   injuries, she will make herself available in Portland,

12   Maine, and again, that is a trip that the Defendants

13   have indicated they intend to take anyway, to depose

14   Dr. Sendzicki.

15             She'll make herself available on August 25th,

16   August 31st, and/or September 7th, as needed, and

17   provided that Defense Counsel follows through this

18   time, I will be happy to arrange for Dr. Sendzicki to

19   be available during that time frame as well, so that

20   both Ms. Feld and Dr. Sendzicki can be deposed

21   together.

22             THE COURT:  Well, is Dr. Sendzicki a

23   scheduled deponent?

24             MR. OSTER:  Dr. Sendzicki is -- I mean,

25   that's something of a complicated question because at

1    present the Defense has indicated an intention or

2    desire to depose three time the number of fact

3    witnesses which the Court has permitted, but -- and

4    furthermore, because Judge Huvelle was of the view that

5    deposing treating physicians is a waste of time and

6    money, she ordered that the Plaintiff would consent to

7    any proposed deposition of a treating physician.

8            However, Dr. Sendzicki is on the list.  In

9    light of today's hearing and these recent events, we

10   would certainly consent to her being deposed.

11           THE COURT:  I see.

12           MR. OSTER:  And again, I will do what I can

13   to make her available, provided that I get a commitment

14   from the Defense that they'll follow through and take

15   the deposition.

16           THE COURT:  All right.

17           THE COURT:  Mr. Kirtland, I'll hear from you,

18   sir.

19           MR. KIRTLAND:  Thank you, Your Honor.

20           We understood from our last telephonic

21   conference, that Mr. Oster was directed by the Court,

22   at today's conference, to produce dates for Karen Feld

23   to resume and complete her deposition in D.C.

24           THE COURT:  And he's -- And he put the 20 --

25           MR. KIRTLAND:  Mr. Oster has --

1          THE COURT:  Well, he put the 27th of

2    September on the table, I think.

3          MR. KIRTLAND:  Sorry, Your Honor?

4          THE COURT:  I think he indicated that Ms.

5    Feld would be available September 27, or the week of

6    September 27 for a deposition in the District of

7    Columbia, or the balance of her deposition.

8          MR. KIRTLAND:  Yes, Your Honor.  I heard --

9          THE COURT:  Yes.

10          MR. KIRTLAND:  -- Mr. Oster's representation.

11          Yesterday, we had a further discussion on

12    this, and he had not provided me those dates, --

13          THE COURT:  All right.

14          MR. KIRTLAND:  -- but he has now provided

15    them on the record.

16          The issue that we have, Your Honor, is that

17    the note from Dr. Sendzicki in Maine, provided on

18    August 11th does not say that Karen Feld cannot travel

19    to D.C.  The note does not say that she cannot be

20    deposed for a full day.

21          The flight from Portland, Maine to

22    Washington, D.C. is a 90 minute flight.

23          The note does show that Ms. Feld's operating

24    a car, that on August 6th she drove from her lake house

25    in Bridgton, Maine to the Portland airport, which is

1    about a one-hour drive, and there are other methods of

2    getting from Portland, Maine to D.C., including car and

3    train.  There's an Amtrak train that takes eight and a

4    half hours to go from Portland to D.C.

5         So, we do not agree that Dr. Sendzicki's note

6    provides any medical basis for Karen Feld not returning

7    to the District of Columbia immediately.

8         We noticed Ms. Feld's deposition for June 9th.

9    It was for a full day.  We then rescheduled it to

10   accommodate her being in Maine on June 9th to June

11   28th.  It was agreed to be a full day.  She terminated

12   that deposition early.

13        Rule 30(d)(3) of the Federal Rules provides

14   that in that instance the obligation is on the person

15   terminating the deposition, or seeking to limit it, to

16   file and move for a protective order, which Ms. Feld

17   has never done.  Instead, she put the burden on us to

18   move to compel, after trying for three and a half weeks

19   to get dates for her to appear in D.C.

20        And we also do not have -- And I think it's

21   important to note for the record, we do not have any

22   affidavit from Karen Feld providing sworn testimony

23   that she cannot travel to D.C. immediately, or

24   justifying these -- under oath, these self-reported

25   symptoms to the osteopath in Maine.

1              All of this, of course, took place after Ms.

2      Feld terminated her deposition on June 28th, and then

3      voluntarily went to Maine which, as I said, in the last

4      call, we contend, was entirely inappropriate because

5      the -- we wanted to resume Ms. Feld's first day of

6      deposition that same week, and there was a purpose to

7      that, Your Honor.

8              We wanted to depose Ms. Feld for one day and

9      then depose a number of her treating physicians, and

10     then depose Ms. Feld again, and so we're not able to

11     schedule party depositions in this case, as we would

12     like.

13             So I wanted to note all that for the record,

14     Your Honor.

15             We would ask that Ms. Feld be directed to

16     return to D.C. immediately, and be made available to

17     complete her deposition in the first week of September.

18             We think, as stated in our moving papers, that

19     Ms. Feld is a serial abuser of the discovery process.

20     She's shown this in other litigation, as ordered by

21     Judge Walton when he was in the Superior Court, and we

22     think that's what's happening here.

23             She's forcing Mr. Feld, and Feld

24     Entertainment, Incorporated, to incur substantial time

25     and expense responding to her discovery requests, while

1   she continues to keep herself out of the jurisdiction

2   and not resume a duly noticed and scheduled deposition.

3   So we would ask for that relief.

4         In the alternative, if the Court is minded to

5   order her to complete her deposition in the week of

6   September 27th, then we would respectfully suggest that

7   until Ms. Feld completes her deposition, that she not

8   be allowed to take any further depositions or discovery

9   in this case.

10        Thank you, Your Honor.

11        THE COURT:  Okay.

12        MR. OSTER:  Your Honor, may I respond?

13        THE COURT:  Briefly, Mr. Oster.

14        MR. OSTER:  Thank you.

15        Just to the last point, Your Honor, that

16  makes no sense.  As I indicated, there are some 30

17  depositions which, notwithstanding Judge Huvelle's

18  admonishment not to try to run up deposition costs,

19  that they have asked for.

20        There are other depositions that we have

21  scheduled, including an FEI employee.  If there is a

22  concern about delay, putting off all other depositions

23  that we intend to take in this case until after Ms.

24  Feld's deposition simply is something of a punitive

25  action which will only increase the delay.

1    Let me respond to the point about Ms. Feld's

2    deposition on the 28th.  She did leave because of

3    medical reasons.  That evening, we faxed over to

4    Fullbright, the letter which I produced for Your Honor

5    yesterday from Dr. Steele, who saw Ms. Feld on an

6    emergent basis, and confirmed that she had a medical

7    reason for leaving.

8    The very next day, I received a letter from

9    one of Mr. Kirtland's associates, a copy of a letter,

10   excuse me, demanding a date for Dr. Steele's

11   deposition.  I offered to and did arrange for Dr.

12   Steele to be deposed, to the extent there was any

13   question as to the veracity or the credibility of Ms.

14   Feld.

15   Not only was the deposition -- did it never

16   take place, but I was never given even the courtesy,

17   nor was Dr. Steele given the courtesy of a response to

18   our making the date of July 21st available.

19   I believe that the letter from Dr. Sendzicki

20   does state that Ms. Feld cannot participate in a

21   deposition in D.C. at present.  That's why she

22   recommends that, if necessary to keep her schedule,

23   that the deposition be held by some other means.

24   I mean, certainly, if Your Honor asks us to

25   produce a statement which is clearer, then we'll do so,

1   but I would submit, Your Honor, that that is not

2   necessary.

3          And finally, you know, we're not done with

4   Kenneth Feld's deposition.  We are anywhere between

5   half way and two-thirds done with it, depending on some

6   issues that we have outstanding.  That deposition was

7   never going to be concluded during the week that we

8   began it because we have never received their documents

9   while we wait and wait for, first, a promised draft

10  protective order, and now we're being told that we have

11  to wait for documents until the Court rules on the

12  motion for a protective order.

13         At Mr. Feld's deposition, he told us that due

14  to vacation and business travel if -- in order for us

15  to finish his deposition, we would have to travel to

16  Tampa, Florida.

17         Now, from where I'm standing, the only

18  difference between Mr. Feld's position and Karen Feld's

19  position is that Karen Feld has a legitimate medical

20  reason, while Kenneth Feld simply is demanding that we

21  travel to Tampa only for his own convenience.

22         So, Your Honor, again, I think the record is

23  clear.  Ms. Feld has a legitimate, progressive medical

24  condition.

25         She has done her best to comply with her

1   discovery requirements.  She has offered three

2   alternatives, including coming back on the twenty-

3   seventh but -- unless her physician tells her not to.

4          Thank you.

5          MR. KIRTLAND:  Your Honor, if I just could

6   briefly respond for less than a minute?

7          THE COURT:  Go ahead, less than a minute.

8          MR. KIRTLAND:  Thank you, Your Honor.

9          Mr. Oster is attempting to cloud the issue of

10  his client's failure to comply with a duly noticed

11  deposition with that of Mr. Feld, and that's -- I'd

12  like to respond briefly.

13         Mr. Feld made himself available during the

14  entire week of June 20th.  We communicated, in late

15  May, to Mr. Oster, that he could be made available all

16  three days, all 20 hours of his deposition during that

17  week.

18         Mr. Feld also made himself available in

19  February for deposition.  That was noticed and

20  scheduled, and Mr. Oster terminated those dates

21  unilaterally, and when, in late May, we told Mr. Oster

22  that Mr. Feld was making himself available in the full

23  week of June 20th, we told him that he was going to be

24  overseas in the month of July for business and

25  vacation.

1           With that knowledge, Mr. Feld then scheduled

2    depositions of -- Mr. Oster scheduled depositions of

3    Mr. Feld's daughters on the Tuesday of the week, in New

4    York, and as we communicated to Mr. Oster, that would

5    preclude the three days of Mr. Feld's deposition that

6    week, but Mr. Feld did make himself available all day

7    Friday, and then on Saturday, for his two days of

8    deposition.

9           In addition, Mr. Feld is a Tampa resident.

10   Karen Feld is a D.C. resident.

11          In addition, Mr. Feld is the Defendant in

12   these cases.  He did not initiate them, Karen Feld did

13   initiate them here in this District, and she should and

14   is required to appear for deposition in this District.

15          Thank you, Your Honor.

16          THE COURT:  All right.

17          Now, --

18          MR. OSTER:  Your Honor, may I respond?

19          THE COURT:  No.  I think I've heard enough,

20   Mr. Oster, on that issue.

21          Mr. Kirtland, let me ask you two questions.

22   With respect to Ms. Karen Feld's continuation of her

23   deposition, what prejudice is there to the Defendant if

24   her deposition is taken, accepting for a moment, your

25   desire and request that she be deposed in Washington

1    D.C., and I think the Defendant has a right to depose a

2    Plaintiff who initiates a lawsuit in this District, to

3    depose the person in this District.

4         What prejudice is there to the Defendant if

5    her deposition is concluded in the last week of

6    September, as opposed to the first week, if there is

7    any prejudice?

8         MR. KIRTLAND:  Your Honor, the prejudice is

9    that -- is twofold.

10        One is that Defendant has the right to take

11   discovery in the order that they deem best advantageous

12   to their case.  There is, for parties in D.C., under of

13   the local rules, a five-day notice for depositions, and

14   we had a specific order in which we were going to take

15   discovery to best advance the claims and defenses of

16   our client in this case.

17        THE COURT:  Well, when you say "Order," are

18   you talking about the need for you to take other

19   depositions prior to, or subsequent to Ms. Feld's

20   deposition, or are you --

21        MR. KIRTLAND:  Yes, Your Honor, subsequent

22   to.

23        THE COURT:  -- or are you referring also

24   to --

25        MR. KIRTLAND:  Those are --

1          THE COURT:  -- the depositions that Plaintiff

2    seeks with respect to Defendants' potential witnesses?

3          MR. KIRTLAND:  The former, Your Honor.  It is

4    that our plan is, and we communicated this to Mr. Oster

5    in early June, was that we wanted one day with Ms.

6    Feld --

7          THE COURT:  Yes.

8          MR. KIRTLAND:  -- in order to determine and

9    narrow down some of the doctor depositions that we're

10   going to have to take --

11         THE COURT:  And the doctor depositions, one

12   of them being Dr. Sendzicki up in Maine; is that

13   correct?

14         MR. KIRTLAND:  That is correct, Your Honor.

15         THE COURT:  And were you going to take

16   deposition -- were you going to take her deposition in

17   Maine, or was she going to come down to Washington?

18         MR. KIRTLAND:  We hadn't crossed that bridge

19   yet, Your Honor, but I don't think we can force her to

20   come to Maine.

21         THE COURT:  Right.

22         MR. KIRTLAND:  I mean come to D.C.

23         THE COURT:  Well, I think you're probably

24   correct, but you were -- were you contemplating some

25   sort of video conference, or are you contemplating

1    perhaps going up to Maine?

2           MR. KIRTLAND:  We hadn't made that final

3    decision, --

4           THE COURT:  All right.

5           MR. KIRTLAND:  -- but it's possible that we

6    were going to go to Maine.

7           THE COURT:  All right.  All right.  Okay.

8           MR. KIRTLAND:  And that goes into the second

9    point of the prejudice, Your Honor, which is that it

10   just continues to push out the schedule so that now,

11   you know, we filed a joint motion, or the parties did,

12   to extend fact discovery to the end of September, with

13   Ms. Feld being deposed in the last week of September,

14   and then there will have to be some follow-up discovery

15   thereafter, so --

16          THE COURT:  Right.

17          MR. KIRTLAND:  -- we'll just continue to push

18   out the schedule.

19          THE COURT:  Well, all right.  Thank you, Mr.

20   Kirtland.

21          All right.  I'm -- And the second question

22   was your -- which you answered for me.

23          There was a suggestion that you had a

24   schedule, if you will, for depositions, and it was

25   going to -- and I think Mr. Oster was suggesting that

1  other discovery continue while awaiting the conclusion

2  of Ms. Feld's deposition.

3          His depositions, are you -- is it your

4  position that the Plaintiff cannot take any

5  depositions, for instance, the FBI person, pending the

6  deposition of Ms. -- concluding the deposition of Ms.

7  Feld?

8          MR. KIRTLAND:  Yes, Your Honor.

9          THE COURT:  Why is that?

10         MR. KIRTLAND:  Our position is that Mr. Feld

11  has been deposed for two full days.  His wife has been

12  deposed for a full day.

13         THE COURT:  Yes.

14         MR. KIRTLAND:  Two of his daughters have been

15  deposed.

16         Mr. Oster has deposed the two --

17         THE COURT:  Right.

18         MR. KIRTLAND:  -- security guards at the

19  shivah (phonetic), and with Ms. Feld's conduct, as set

20  forth in our motions, and as discussed today, I think

21  that there is a real possibility that Ms. Feld will not

22  complete her deposition, but in any event --

23         THE COURT:  But what's -- I'm not sure I'm

24  following you.

25         Mr. Oster indicated that he would like to

1    take the deposition of an FBI agent --

2              MR. OSTER:  FEI.

3              I'm sorry, Your Honor, if I can interrupt?

4              THE COURT:  Yes.

5              MR. OSTER:  Feld Entertainment is Kenneth

6    Feld's company.

7              MR. KIRTLAND:  FEI, Your Honor.  Feld

8    Entertainment --

9              MR. OSTER:  (Inaudible) FEI person.

10             Your Honor, if I may, --

11             THE COURT:  Wait a minute.

12             You wanted to take the deposition of --

13             MR. KIRTLAND:  It's a -- It's an executive at

14   FCI, Your Honor.

15             THE COURT:  Oh, an executive.  I see.   An

16   individual in --

17             MR. KIRTLAND:  And our position, Your Honor,

18   is that Ms. Feld's deposition was terminated improperly

19   on June 28th --

20             THE COURT:  No.  No, I'm aware of that, Mr.

21   Kirtland.

22             MR. KIRTLAND:  -- and she should -- It's just

23   very simple, is that until she resumes and completes

24   that first day, and there's no medical evidence she

25   can't travel to D.C. right now, --

1          THE COURT:  Yes.

2          MR. KIRTLAND:  -- then Karen Feld should not

3    be entitled to take any further depositions, and during

4    this time it won't be wasted because we have lots of

5    depositions to take on behalf of our clients.

6          THE COURT:  But is your position based upon a

7    punitive quid pro quo situation, or is there a

8    substantive reason why other depositions or other

9    discovery can't move forward?

10         MR. KIRTLAND:  Well, Your Honor, it's not

11   that we're saying other discovery, it's simply that

12   Karen Feld, until she completes her first day of her

13   deposition, should not be entitled to force Mr. Feld to

14   sit by and incur the substantial expense while she

15   herself is taking further depositions.

16         So, she unilaterally terminated.  She has not

17   sought a protective order --

18         MR. OSTER:  Your Honor, we've heard this now

19   three times.

20         THE COURT:  No.  No.  No.  Let him finish,

21   Mr. Oster.  Let him finish.

22         MR. KIRTLAND:  And so, Your Honor, I think

23   it's only fair and equitable, until Ms. Feld resumes

24   that day of deposition that she has put on hold, that

25   she herself is not entitled to take any further

1    depositions.

2          The Plaintiffs have taken a lot of

3    depositions to date.  We have only taken one deposition

4    on behalf of Defendants, so we have a slate of

5    depositions to take and complete in September, and then

6    when Ms. Feld chooses to appear in September and

7    complete her deposition, then she can continue along

8    and take further depositions.

9          THE COURT:  Well, is there any prejudice to

10   it?

11         MR. OSTER:  No, Your Honor.

12         THE COURT:  Aside from the equitable aspect,

13   Mr. Kirtland, is there any prejudice to Mr. Feld if

14   some other depositions were taken?  That's really of

15   critical concern to me.  I don't want to put the

16   Defendant in any disadvantage vis-a-vis whatever

17   information is going to be elicited from Ms. Feld that

18   might be valuable in conducting a deposition of us --

19   some other deposition in the interim, which was outside

20   the schedule that you had envisioned for your client?

21         MR. KIRTLAND:  Yes, Your Honor. There is --

22   If Plaintiff, Karen Feld, is allowed to take

23   depositions in the interim, until she completes her

24   first day of deposition, Mr. Feld has to continue to

25   incur the substantial expense of defending --

1    appearing, defending and preparing for those

2    depositions, number one; and number two is that --

3              THE COURT:  Well, he was going to do that

4    under any circumstances.

5              MR. OSTER:  Right.

6              THE COURT:  So --

7              MR. KIRTLAND:  Your Honor, not if -- Your

8    Honor, not if Ms. Feld does not appear and complete her

9    first day of deposition.  We've been after her now for

10   two full months --

11             THE COURT:  All right.

12             MR. KIRTLAND:  -- to get the day to complete

13   that first day of deposition.

14             We now hear today --

15             THE COURT:  Right.

16             MR. KIRTLAND:  -- that it won't happen for

17   three months after.

18             THE COURT:  All right.

19             MR. KIRTLAND:  We've now only had three hours

20   with Ms. Feld, and so our position is that Ms. Feld is

21   the Plaintiff in this case.  She improperly terminated

22   her first day.  When she chooses to return to this

23   jurisdiction, and when she chooses to comply with her

24   discovery obligations, then, at that point, she should

25   be entitled to take further discovery in this case, and

1   until that time she should not.

2            We do not think that Ms. Feld is acting in

3   good faith.  We do not see any medical evidence --

4            THE COURT:  No.  No.  No.  Mr. Kirtland,

5   you've made that point.

6            MR. KIRTLAND:  Okay.  So the --

7            MR. OSTER:  Your Honor, may I be heard at

8   this point?  Just two points, Your Honor.

9            The first is the very notion of punishing a

10  litigant for not traveling against medical advice is

11  flatly unjust, and I think Mr. Kirtland has made quite

12  clear that there is no actual prejudice to his client.

13           The fact is we've -- this deposition of Mr.

14  McCoy was scheduled once before.  It was unilaterally

15  cancelled by the Defendants, who simply --

16           THE COURT:  Yes.

17           MR. OSTER:  -- said even though it was duly

18  noticed with proper advance warning, he just can't show

19  up that day.

20           THE COURT:  Right.  Mr. --

21           MR. OSTER:  We had to chase him down.

22           THE COURT:  Mr. Oster, I'm really -- I'm not

23  interested in hearing anything further as to what

24  occurred in the past.  I'm going to make a ruling now.

25           I'm new to handling the discovery in this

1    case since Judge Huvelle referred it to me fairly

2    recently.

3            All right.  This is what's going to be

4    happening.  I'm going to require Ms. Feld to complete

5    her deposition beginning on the week of the 27th of

6    September.  She's going to return -- Unless I --

7    Obviously, if there are other medical problems that

8    would foreclose her to do this.

9            Clearly, she is in a position to handle a

10   deposition.  As you've indicated, she would be making

11   herself available immediately, or within the next week

12   or so, so she is mentally up to handling a deposition,

13   based upon your representation.

14           So the only issue would be the physical

15   aspect of her traveling from Maine to the District of

16   Columbia, however, I'm going to accept the

17   representation of Dr. Sendzicki, that she physically

18   should not be traveling, however, you've indicated that

19   she would be in Washington -- back in Washington on

20   September the 27th, that week.  So her deposition will

21   be scheduled.

22           The scheduling that was set by the Defendant

23   will follow from that.  In other words, they will

24   depose her for a day and then subsequently there will

25   be some medical depositions of the treating or expert

1  testimony of any medical people that were scheduled and

2  has been scheduled.

3          I'm going to defer other depositions until

4  post-September 27th.

5          Counsel, I -- since I have -- I'm not going to

6  revisit the history of what's occurred in the last few

7  months, I was not responsible, but henceforth, all

8  scheduled depositions will be -- the notices of dates

9  will be cc'd to me so that I will have knowledge of

10  when these depositions are scheduled, and I will also

11  schedule status hearings, so I want to know what's

12  occurred, not occurred at the deposition, but whether

13  or not the depositions were completed within the time

14  frame, and if there is any subsequent depositions to be

15  scheduled from that.

16          Let me just put on the record right now, with

17  respect to depositions, if there are problems at

18  depositions, and I'm not soliciting this, I want you to

19  know that I have a standard rule with depositions, that

20  questions asked shall be answered unless the

21  representative or attorney for the deponent indicates

22  on the record that he or she wishes to refuse to answer

23  based upon privilege and work product.  They're the

24  only two exceptions.  All other objections will be

25  noted on the record and the deponent will respond or

1   answer those questioned.

2           If there is a serious problem that you can't

3   resolve, I will make myself available, but I'm not

4   soliciting that you call me every ten minutes.

5           If there is a serious problem getting the

6   deposition concluded, I will bring the parties here

7   into the Courthouse and I will monitor the depositions

8   and make myself available, because I'm not going to go

9   forward and have a lot of this back-and-forth, which I

10  think is inimicable (phonetic) to the process of

11  getting this case ready for trial sometime in the

12  future.  I don't know when.  I doubt if it will be this

13  year, but it will be -- probably be sometime next year

14  unless it's resolved otherwise.

15          I will -- With respect to the protective

16  order, as far as I know, the motion for protective

17  order has not been responded to.

18          MR. OSTER:  You asked for that on Monday,

19  Your Honor.

20          THE COURT:  All right.

21          So as soon as I receive a response to that, I

22  will rule on the protective order.

23          During the last status hearing, Mr. Oster, on

24  behalf of the Plaintiff, indicated that he was

25  contemplating some new motions type of -- motion to

1    compel.  I have not received that as of yet, and there

2    was some discussion as to whether or not it would be

3    fruitless to have a meet and confer between the

4    parties.

5           I would much prefer to have the parties

6    comply with the local rules, however, if both of you

7    concur that it would not be fruitful to have a meet and

8    confer and you file the motion, I'm sure it will be

9    responded to and I will either decide to rule on the

10   pleadings or setup a hearing.

11          So that's where we stand.

12          MR. OSTER:  Your Honor, may -- Let me

13   briefly.  I don't think we have an issue.

14          We did -- Pursuant to your order, we did meet

15   and confer at length.  I believe it was on Wednesday.

16   We did resolve one issue, but there are still other

17   issues.  However -- And I believe that Your Honor

18   contemplated that we would discuss them today, however,

19   Your Honor's statement about your hard and fast rule

20   that questions are answered unless it is a matter of

21   privilege or work product resolves this matter, at

22   least as far as we're concerned.

23          None of the questions to which an instruction

24   not to answer was given that would have been the

25   subject of a dispute, involved privilege or work

1    product.

2              THE COURT:  All right.

3              MR. KIRTLAND:  Your Honor, if I could just

4    briefly respond.

5              Mr. Oster and I did meet and confer, as you

6    directed, on Wednesday.  We resolved one issue and then

7    there was one issue was outstanding.

8              Given your instruction about objections at a

9    deposition, I think what we, representing Defendants,

10   will have to do is move for protective order because

11   what Mr. Oster wants to ask, as we can explain in the

12   pleadings, are questions that have -- to Mr. Feld that

13   have, in our contention, nothing to do with Karen Feld

14   and nothing to do with any claim or defense in this

15   case, and so it is classic abuse of process.

16             THE COURT:  All right.

17             MR. KIRTLAND:  And given your --

18             MR. OSTER:  It's a relevance objection, Your

19   Honor, which is inappropriate --

20             THE COURT:  Mr. --

21             MR. OSTER:  -- at a deposition, and it's

22   certainly not abuse of process.

23             THE COURT:  Mr. Kirtland, if you wish, you

24   obviously will have a right to file a protective order

25   and -- in that regard, and Mr. Oster will respond to

 1 | it.
 2 |                 MR. OSTER:  Thank you, Judge.
 3 |                 THE COURT:  Yes.  All right.
 4 |                 Counsel, I'm going to issue an order
 5 | outlining what I've ruled upon, and I think until such
 6 | time, since everything is going to be in a holding
 7 | pattern, I will let you know by minute order as to the
 8 | next status hearing, telephonic status hearing or, if
 9 | need be, it will be a hearing in court so that it's on
10 | the record, and I think --
11 |                 MR. OSTER:  Thank you, Your Honor.
12 |                 THE COURT:  -- it may well be that in the
13 | future, until such time as the --
14 |                 MR. KIRTLAND:  Sorry, Your Honor.  I didn't
15 | hear the last part.
16 |                 THE COURT:  Pardon?
17 |                 MR. KIRTLAND:  Sorry.  You faded off at the
18 | last --
19 |                 THE COURT:  Yes.  No, I haven't completed
20 | what I was saying, is that until such time as the
21 | parties can seem to work together in a cooperative
22 | manner to get this discovery completed, I think
23 | everything should be on the record, and accordingly, if
24 | there is a telephone status, I will see to it that it's
25 | done on the record.

1          MR. KIRTLAND:  Thank you, Your Honor.

2          MR. OSTER:  Thank you, Judge.

3          THE COURT:  Thank you, Counsel.

4          MR. OSTER:  Judge, may I suggest, since all

5    the parties are present, that if the case is going to

6    be on something of a hiatus through the week of

7    September 27th, that would be a good time for us to

8    revisit mediation and potential settlement of the case.

9          THE COURT:  Well, I've not lost sight of

10   that, Mr. Oster, and I -- that is -- that will

11   definitely occur, and I was going to do that perhaps

12   within the next ten days or so.

13         Unfortunately, the first two full weeks in

14   September I'm gonna be in trial at the moment, unless

15   they resolve themselves, but I will try to set

16   something up in the interim, but I haven't lost sight

17   of it.  I'm not ignoring the mediation aspect.

18         MR. OSTER:  Thank you, Your Honor.

19         THE COURT:  But this is front and center at

20   the moment.

21         Thank you, Counsel.

22         MR. KIRTLAND:  Thank you, Your Honor.

23         MR. OSTER:  Take good care, Your Honor.

24         Thank you.

25       (Proceedings concluded at 10:40 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings
in the above-entitled matter.


/s/_____          August 24, 2010
STEPHEN C. BOWLES