UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KAREN FELD,                          .      Case No. 1:08-CV-01557
                                     .      (ESH/AK)
               Plaintiff,            .
                                     .      Washington, D.C.
        v.                           .      October 29, 2010
                                     .
KENNETH FELD, ET AL.,                .
                                     .
               Defendants.           .
. . . . . . . . . . . . . . . .
KAREN FELD,                          .      Case No. 1:09-CV-00479
                                     .      (ESH)
               Plaintiff,            .
                                     .
        v.                           .
                                     .
KENNETH FELD AND                     .
                                     .
CHARLES F. SMITH,                    .
               Defendants.           .
. . . . . . . . . . . . . .

TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE ALAN KAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      Oster Law Firm
                        By:  STEVEN MICHAEL OSTER, ESQ.
                        1050 17th Street, N.W.
                        Suite 700
                        Washington, DC 20036

                        Bonner, Kiernan, Trebach
                        & Crociata, LLP
                        By:  NIMI AMIRTHALINGHAM, ESQ.
                        1233 20th Street, N.W.
                        Suite 800
                        Washington, DC 22036

Proceedings recorded on FTR.

_____

APPEARANCES (CONTINUED):

For the Defendants:      Fullbright & Jaworski, LLP
                         By:  MATTHEW H. KIRTLAND, ESQ.
                         801 Pennsylvania Avenue, N.W.
                         Suite 500
                         Washington, DC 20004

                         Law Offices
                         By:  BRUCE WAYNE HENRY, ESQ.
                         300 North Washington Street
                         Suite 204
                         Alexandria, VA 22314

Transcribed by:          MS. BERNADETTE JANKAUSKAS

1          (Proceedings commenced at 10:19 a.m.)

2              THE CLERK:  Civil Action 2008-1557, <u>Karen</u>

3     <u>Feld v. Kenneth Feld and Feld Entertainment, Inc.</u>

4              Steven M. Oster and Nimi Amirthanlingham

5     representing the Plaintiff.

6              Matthew H. Kirtland representing the

7     Defendants.

8              Civil Action 2009-479, <u>Karen Feld v. Kenneth</u>

9     <u>Feld</u>.

10             Steven M. Oster representing the Plaintiff.

11             Matthew H. Kirtland representing the

12    Defendant.

13             Bruce W. Henry representing Third-Party

14    Defendant Charles F. Smith.

15             Both cases are set for a telephone status

16    conference.

17             THE COURT:  Good morning, Counsel.

18             COUNSEL:  Good morning, Your Honor.

19             THE COURT:  So I received the information as

20    to what occurred, I think last Friday, before the trial

21    judge, Judge Huvelle.

22             So, since I'm now responsible for moving this

23    case along for trial, we now have bookends, so to

24    speak, in terms of where we are today and where we have

25    to be by April the 21st, which means that's the date

4

1    that the pretrial conference is being held.  So let me

2    just run down a few things, and then I obviously am

3    going to have to tap in and get some information from

4    you folks.

5         So, number of depositions.  That's now set,

6    and to avoid any confusion with respect to the shiva

7    case, each side, Plaintiff/Defendant, has 20

8    depositions, and that includes, includes those

9    depositions that have -- are in progress or have been

10   taken and completed.

11        With respect to the trust case, each side is

12   entitled to ten depositions and, of course, those

13   depositions will include the principal parties who have

14   already been at least partially deposed.

15        With respect to the time frame with respect

16   to non-parties, non-parties, the Trial Court has set

17   seven hours with respect to parties each side -- each

18   party can be deposed for 20 hours, including whatever

19   time has already been used by way of partial

20   depositions.

21        I know both Ms. Feld and Mr. Feld have time

22   remaining, so to speak.

23        Now, those limits, as far as I'm concerned,

24   are final.  Obviously, if anything -- exigent issues

25   come up, you can always come back to me, but it's going

1    to be probably difficult to get me to move from the

2    number of depositions or, for that matter, the time

3    frame.

4           My directive, moving on again, my directive

5    at the earlier, most recent telephone status was that

6    the Defendant would have the right to depose the

7    balance of Ms. Feld's deposition and 0put a hold on all

8    subsequent depositions.  My order still stands.

9    However, we have to come to grips with the new

10   schedule, including the trial date, that really has

11   compressed the available time for meeting the pretrial

12   conference deadline.  We now know what the outer limits

13   are.

14          So I need to know, sooner rather than later,

15   like within the next few days, that the Defendant who

16   wants to depose Ms. Feld, and I'm advised by -- or I

17   was advised by Plaintiff's Counsel and by Plaintiff

18   herself, in her affidavit, that she contemplates being

19   back in Washington by mid November.  So I'm going to

20   need to know how long it's going to take to complete

21   her deposition because there's been some discussions,

22   as you well know, as to her ability to sit for more

23   than a particular period of time for her deposition.

24          And I'm also going to have to know who her

25   treating medical providers are who -- that Plaintiff

1    contemplates using at the trial because I think we may

2    have to re-think and I'm asking -- I'm going to ask the

3    Defendants to re-think their desire to have Ms. Feld's

4    deposition completed, and I think, Mr. Kirtland, that

5    you had made a representation, I think last time, that

6    you needed to have her deposition completed for the

7    purpose of being able to depose her medical providers,

8    but if you know who they are and there are other

9    deponents who are not -- can be deposed without

10   necessarily having Ms. Feld complete her deposition, it

11   may well be that I'm going to encourage you to take

12   their depositions, mainly because assuming that Ms.

13   Feld indeed does show up in the Washington area mid

14   November, Mr. Oster's time schedule is such that he

15   cannot be present at her deposition, as he indicated,

16   until December 2, which also is going to further put a

17   crimp, so to speak, into the available time.

18          And in that regard, I am deferring the motion

19   for the IME, which has been made by the Defendant for

20   Ms. Feld to be deposed to ascertain her ability to

21   travel, and I'm putting that into a holding pattern

22   until mid November.

23          If Ms. Feld, and I'm not advised that Ms.

24   Feld -- I'm advised that Ms. Feld has not arrived in

25   the Washington area by the mid November deadline, then

I'm going to grant the motion and require that the
Defendant take the IME with respect to her ability to
travel, on or before November 30th of this year.

So, having sort of set the -- some of the
basic initial requirements, let's move on to, perhaps,
the issue of the scheduling order that we're going to
need.

Initially, the conclusion of fact discovery.
Obviously, the current date of both July -- current
dates of -- earlier dates of July and October are no
longer viable.  So I'm going to need from both of you,
all three of you, I guess, the -- your views on how
long it's going to take to complete fact discovery.

I'm also advised that Judge Huvelle required
that if you are going to be deposing a deponent for the
purposes of the shiva case, that at the same time they
have to be deposed for purposes of the trust case,
which is going to make it a little more complex,
obviously, for you, and so I'm prepared to listen to
you on that, how that works.  So that's what I'm also
going to need.

I'm also going to need a date or I will set a
date for any independent medical examination to be
conducted on Ms. Klein (phonetic) because I think the
Defendant has made statements to the effect that they

1    contemplate making a motion for that.  So we'll have to

2    -- If indeed they do that, that'll have to have a time

3    set on that, and I'm assuming that that motion would

4    result from the Defendant -- the Plaintiff

5    acknowledging that they contemplate using Ms. Feld's

6    medical condition as an aspect of the shiva case, in

7    terms of a jury understanding the rationale for certain

8    of her actions during the shiva.

9           So, I will open up --

10           MR. OSTER:  Your Honor, --

11           THE COURT:  -- the discussion to Mr. Kirtland

12    or Mr. Oster.

13           MR. OSTER:  Your Honor, this is Mr. Oster.

14    Good morning.

15           THE COURT:  Good morning.

16           MR. OSTER:  I have a couple of questions.

17    You answered one about there not being separate

18    depositions for each of the cases.

19           I also wanted to confirm that Judge Huvelle's

20    fairly emphatic prior order that there would be no

21    depositions of treating physicians without either

22    Plaintiff's consent or leave of Court.  I wanted to

23    confirm that that still stands.

24           At the February 18th conference the Judge was

25    of the view that taking any depositions of treating

1   physicians was a waste of time, and certainly the

2   numbers that Mr. Kirtland was talking about then, which

3   have since tripled was, in Judge Huvelle's words, "pure

4   harassment" of the Plaintiff, and as a result, she put

5   in place, that particular safeguard, and I wanted to

6   make sure that that safeguard still stands.

7            MR. KIRTLAND:  Your Honor, this is Mr.

8   Kirtland.

9            May I be heard on that briefly?

10           THE COURT:  Yes.  Go ahead.

11           MR. KIRTLAND:  I disagree with Mr. Oster's

12  characterization of the February 18th hearing, but he

13  is correct that in the February 18th order in the shiva

14  case amending the prior scheduling order, Judge Huvelle

15  did write, "Defendant may not depose any treating

16  physicians without the Plaintiff's consent, unless

17  Defendant seeks permission from the Court."

18           Judge Huvelle also said at the hearing that

19  if consent is unreasonably withheld by Plaintiff, and

20  Defendants have to go to the Court to get consent, then

21  she will grant the cost of that proceeding.

22           THE COURT:  I didn't hear you, Mr. Kirtland.

23           MR. KIRTLAND:  Sorry, Your Honor.

24           THE COURT:  The last end.

25           MR. KIRTLAND:  Yeah.

1          Judge Huvelle said -- The point that Judge

2    Huvelle was getting to in the hearing is that there

3    were -- we were discussing that had been identified in

4    the materials, over a hundred doctors who have seen the

5    Plaintiff over the course of the last 10 to 15 years,

6    and she was merely pointing out that not all of them

7    needed to be deposed in this, and that's fine.  Of

8    course, we don't intend to depose the doctors.

9          But the important point is that Ms. Feld is

10   claiming $110 million in this case, based on medical

11   injuries suffered as a result of what she alleges

12   happened at Aunt Shirley's shiva, and if she's going to

13   claim those injuries, then we have course to represent

14   our client, need to depose her treating physicians.

15          THE COURT:  All right.

16          Let me ask both of you, and I'll -- since

17   you're -- both of you.

18          I'm starting with you, Mr. Kirtland, because

19   I think you used the phrase, what do you mean -- well,

20   two things: There are the allegations in the Complaint

21   that events occurred at the apartment of Mrs. Feld and

22   the shiva itself, that certain actions were taken by

23   security people resulting injuries to Ms. Feld.

24          Are you looking for physicians who treated

25   Ms. Feld for these alleged injuries, or is -- are they

1    the treating physicians that you're referring to when

2    you say that you would like to depose or need to depose

3    treating physicians, or does it go beyond that?

4           MR. KIRTLAND:  Yes, in part, Your Honor.  In

5    written discovery responses the Plaintiff has

6    identified various doctors that treated her for her

7    alleged injuries.  Those persons, unless if such so de

8    minimis are -- need to be deposed.

9           And then, there's also another class of

10   people who treated Ms. Feld.  We've gotten a lot of

11   their records.  We had to go and get them from the

12   doctors, but there are people who have testimony that

13   we contend will contradict Ms. Feld's allegations.

14          So there's the people who --

15          THE COURT:  Contro --

16          MR. KIRTLAND:  Contradict her allegations.

17          THE COURT:  Allegations of what?

18          MR. KIRTLAND:  Like, for example, if she said

19   an injury happened because of the shiva --

20          THE COURT:  I see.  I see.  I see.

21          MR. KIRTLAND:  -- and we have pre-existing

22   injuries --

23          THE COURT:  So you're saying predate previous

24   injuries predating the events that occurred during the

25   shiva?

1          MR. KIRTLAND:  Correct, Your Honor.

2          For example, Ms. Feld said, and it's not

3    disputed, she said that -- in her affidavit she has a

4    history of head injuries.

5          One of the injuries that she's alleging that

6    happened at the shiva is a head injury.  Of course, we

7    need to be able to ascertain what her condition was

8    before the shiva, and then ascertain what it was after

9    in order to determine --

10          THE COURT:  Okay.

11          MR. KIRTLAND:  -- the veracity of her

12    allegations.

13          So we're looking for people who treated her

14    for her alleged injuries at the shiva, as well as any

15    of her other relevant physicians.  And what I was

16    anticipating, and I don't have a problem keeping with

17    what Judge Huvelle said in her February 18th order --

18          THE COURT:  Right.

19          MR. KIRTLAND:  -- that we need to, you know,

20    we need to have consent from the Plaintiff to depose

21    the treating physicians because obviously Mr. Oster is

22    going to consent to depositions of a number of the

23    treating physicians, and if we have an issue then I

24    think we can just call up Your Honor and talk about it

25    and get a ruling from the Court.

1          THE COURT:  All right.

2          Now --

3          MR. KIRTLAND:  But this why, Your Honor, I

4   think we need to know who Plaintiff intends to call

5   from this pool of treating physicians, because those

6   people obviously need to be deposed before trial.  We

7   can't have trial by surprise.

8          MR. OSTER:  Your Honor, could I speak to that

9   point, please?

10         THE COURT:  Surely.

11         MR. OSTER:  Your Honor, the Federal Rules

12  indicate when, in the course of pretrial, you need to

13  identify your witnesses.  You know, this is really

14  simply a bootstrap argument.  What they've done is

15  they've gone out and sent subpoenas to literally --

16         THE COURT:  No.  No.  No.

17         MR. OSTER:  -- a hundred --

18         THE COURT:  -- Mr. Oster --

19         MR. OSTER:  No, but what you're saying, Your

20  Honor, is the pool is too large for us --

21         THE COURT:  Mr. Oster, please, limit

22  yourself, if you would, to those treating physicians

23  that you contemplate calling at trial.

24         MR. OSTER:  At this point, Your Honor, what

25  I'm -- I mean, I can't say that we're going to be aware

1    on November 4th of which treating physicians we're

2    going to be calling at trial, anymore than Mr. Feld can

3    tell us which of the dozens of guests he had at the

4    shiva he intends to call at trial.

5         Why should we suffer that sort of prejudice

6    and give them that type of advantage when there's no

7    particular reason for it?

8         As Judge Huvelle pointed out on February

9    18th, deposing these doctors is unnecessary.  She said,

10   and I quote:

11        "You could take doctors until it's going to

12        be very costly and you're going to wind up

13        having to pay for the reporter and the

14        Plaintiff's Counsel to be there.  It's crazy.

15        You look at the record, it will tell you.

16        You don't have to depose them.  The idea that

17        there are 30 doctors to depose after you read

18        the records, they have no independent

19        recollection.  You can get your IME."

20        So it was Judge --

21        THE COURT:  In your Complaint, Mr. Oster --

22   in the Complaint --

23        MR. OSTER:  Yes?

24        THE COURT:  -- filed by Ms. Feld, I think, is

25   there not some reference to the fact that as a -- that

1   she had brain surgery which resulted in symptoms

2   similar to -- in some fashion, to Tourette's disease,

3   and that's what gave rise -- gives rise to sometimes

4   her becoming -- making verbal statements in a reflexive

5   sort of manner.

6           Wasn't there something like that in the

7   Complaint?

8           MR. OSTER:  Yes and no, Your Honor.  It

9   really has nothing to do with the surgery.

10           THE COURT:  Well, is that going to be an

11   issue at trial, and there -- certainly, from what

12   discovery I'm aware of so far, there were comments made

13   during the shiva that allege -- according to the

14   Defendants, precipitated some of the -- or the basis

15   for perhaps encouraging Ms. Feld to leave the

16   apartment.

17           So is that going to -- is there going to be

18   testimony by the Plaintiff that whatever verbal

19   comments she -- may have been not intentionally made by

20   her, but as a result of injuries or brain surgery that

21   she had at some prior time?

22           MR. OSTER:  Well, except for the brain

23   surgery which occurred after the shiva, yes, but that

24   testimony, I presume, will be by Ms. Feld and her

25   experts.

1          THE COURT:  And who are her experts?

2          MR. OSTER:  We haven't named --

3          THE COURT:  With that -- with that --

4          MR. OSTER:  -- her experts as of yet.

5          THE COURT:  -- for that injury, yes?  Who are

6     the experts?

7          MR. OSTER:  We haven't yet named them.

8          THE COURT:  You can't name them?  Are they

9     medical people?

10          MR. OSTER:  Yes.

11          THE COURT:  Do you contemplate having a

12     report which will be submitted to the Defendants so

13     that they will have an opportunity to read that report

14     and then -- in other words, that going to be treated as

15     expert testimony?

16          MR. OSTER:  That's correct, Your Honor.

17          The current order and the proposed order

18     which the Defendant submitted last night contemplates

19     that each party provides Rule 26 reports of experts --

20          THE COURT:  I see.

21          MR. OSTER:  -- in sequence, first the

22     Plaintiffs, and then Defendants get to respond.

23          THE COURT:  Okay.

24          So it's your statement to me now on the

25     record, that you don't -- do not know what treating

1    physicians you contemplate calling; is that correct?

2         MR. OSTER:  It's my statement to you on the

3    record that I do not know all of the treating

4    physicians that we intend to call.

5         Certainly, Dr. Sendzicki and a number of her

6    current physicians, maybe one or two others we would be

7    inclined to call, but the notion that on November 4th,

8    for some reason, because there are all these medical

9    reports out there we need to identify all of the

10   witnesses, and I presume it would be to the exclusion

11   of calling another witness if an issue arises down the

12   road, but we're not going to be in a position to do

13   that at that time.

14        I mean, I don't have a real issue with her

15   current physicians and, in fact, we've made it clear to

16   Your Honor and to the Defendant's Counsel that with

17   respect to doctors such as Dr. Senzicki, Dr. Spiegel,

18   and Christina Steele, since they are current treating

19   physicians and they have been involved in the case to

20   the extent of Ms. Feld's issues with her deposition,

21   that we have no objection to him deposing them.

22        THE COURT:  Ms. --

23        MR. OSTER:  But with respect to her

24   historical injuries, and what may or may not have

25   caused what occurred at the shiva, beyond the assault,

1  it's our contemplation that that will be done with her

2  medical records and with an expert.

3          MR. KIRTLAND:  Your Honor, just briefly --

4          THE COURT:  Yes, go ahead, Mr. Kirtland.

5          MR. KIRTLAND:  This is a personal injury

6  case, and in a personal injury case the doctors are

7  deposed.

8          These are the --

9          THE COURT:  No, but if he's designating this

10  individual, Mr. Kirtland, as an expert, then under the

11  rules he's required to provide the expert's report, and

12  it will be a current report.

13          And as an expert, after you've got the

14  report, you will have the right to depose that expert

15  as an expert are normally deposed, post the fact

16  discovery.

17          So you will not be deprived of deposing the

18  individual, it's just that it'll be delayed.

19          MR. KIRTLAND:  Yes, Your Honor.  I'm just

20  pointing out that it's not for Plaintiff to choose

21  which of her treating physicians, both former and

22  current, we depose.  I mean, we depose folks who have

23  information that we deem relevant.

24          If the Plaintiff -- If we come to a

25  particular -- I think this is something that can all be

 1  resolved down the line, Your Honor.  If we come to a

 2  physician --

 3            THE COURT:  It can be resolved how, sir?

 4            MR. KIRTLAND:  Sorry, Your Honor.

 5            If we come to a physician who we want to

 6  depose --

 7            THE COURT:  Yes.

 8            MR. KIRTLAND:  -- and Mr. Oster doesn't

 9  agree, then I think the procedure contemplated by Judge

10  Huvelle is that we will call Your Honor --

11            THE COURT:  All right.  All right.  I will --

12            MR. KIRTLAND:  -- talk it over, and we'll get

13  a ruling.

14            THE COURT:  I will stand by that procedure.

15            MR. KIRTLAND:  Thank you.

16            THE COURT:  Okay.  All right.

17            MR. OSTER:  And, Your Honor, for the record,

18  our only objection was to be forced to start

19  identifying trial witnesses the first week in November.

20            THE COURT:  No, I understand.

21            MR. OSTER:  As --

22            THE COURT:  Yes, I understand.

23            MR. OSTER:  I have no issue with the

24  depositions.

25            MR. KIRTLAND:  Well, Your Honor, where we

1   were coming from, from that, is trying to expedite

2   it --

3           THE COURT:  Yes.

4           MR. KIRTLAND:  -- because what we can't have

5   it is the Plaintiff have her taken --

6           THE COURT:  All right.

7           So, while -- Mr. Kirtland, let me as you now.

8   So I understand your original argument that you needed

9   to complete Ms. Feld's deposition before you deposed

10  some of her medical providers.

11          Are there other -- Since I made a blanket

12  restriction that no further depositions will be taken

13  pending Ms. -- or the completion of Ms. Feld's

14  deposition, are there other potential witnesses out

15  there who can be deposed because of the time

16  restrictions, prior to the completion of Ms. Feld's

17  deposition?

18          Now, having said that, I am conscious of the

19  fact that Mr. Oster himself has indicated that he's not

20  going to be available to take depositions, I think the

21  last half of November.

22          MR. KIRTLAND:  Yes, Your Honor.  This is Mr.

23  Kirtland.

24          There are other -- There are a few other fact

25  witnesses out there, and because of the compressed

1  trial schedule, we're going -- we, Defendants, are

2  going to have to take some treating physician

3  depositions before the completion of Ms. Feld's

4  deposition.  We can't wait until -- We don't know when

5  Ms. Feld's deposition will complete, and we cannot now

6  wait, with a May 9th trial date, for that -- I mean,

7  that could finish in I don't know when, and we can't

8  lose more and more time.

9          So we need to, as Defendants, get forward --

10  get moving forward with our depositions, both -- there

11  are some --

12          THE COURT:  All right.

13          MR. KIRTLAND:  -- fact witnesses as well as

14  some of the treating physicians.

15          THE COURT:  All right.

16          MR. KIRTLAND:  And on Mr. Oster's

17  availability, well, of course we like to schedule

18  things when we can be available, but there is,

19  representing the Plaintiff in this case, you have Mr.

20  Oster, you have Mr. Hassell, and Nimi, and all of whom

21  are, you know, able to attend and defend depositions.

22  In my firm we have other lawyers on the case.

23          THE COURT:  Yes.

24          MR. KIRTLAND:  So I don't think we can hold

25  up the deposition schedule because of the

1   unavailability of one lawyer.

2          MR. OSTER:  Your Honor, if I can respond just

3   briefly.

4          First of all, this entire stay came from a

5   representation by Mr. Kirtland that they needed to

6   depose Ms. Feld, not to complete her deposition, but to

7   at least complete the first day of her deposition

8   before he deposed any of her treating physicians.  I

9   still don't know why that should be the case, but they

10  have taken the exact opposite position when it suited

11  them.

12         Back in February when we were appearing in

13  front of Huvelle, Mr. Kirtland stated, "I think we'll

14  do the doctors before we take the depositions of the

15  Plaintiffs."

16         MR. KIRTLAND:  That's incorrect.

17         MR. OSTER:  Your Honor, there are a lot of --

18  I'm reading it from the transcript.  It's on page 33,

19  lines 17 and 18.

20         MR. KIRTLAND:  No.

21         MR. OSTER:  The point, Your Honor, is that

22  given the fact that Ms. Feld may not be able to

23  complete her deposition in one sitting; given the fact

24  that it's been very difficult to schedule depositions

25  in this case, and I point out that there were

1    depositions where Mr. Kirtland was unavailable and he

2    wasn't offering to have somebody, you know, one of the

3    other hundred or so attorneys at Fullbright sit in for

4    him.

5            So I would expect and I demand the same

6    courtesy from him that he requested from me, in terms

7    of Ms. Feld's deposition.

8            We've got depositions in New York.  We've got

9    a deposition in Chicago -- two depositions in Chicago.

10   We've got one in South Carolina.  We now may have

11   additional witness or two on the west coast.

12           We've got Mr. Feld who, the last time he

13   spoke on the record, stated that he wanted us to go to

14   Florida for his deposition.

15           So, there really is no reason -- and let me

16   just step back.  On Friday, Judge Huvelle also, when

17   she granted Ms. Feld's motion to be excused from the

18   status conference because of her medical situation,

19   Judge Huvelle commented that if -- even if Ms. Feld

20   medically could not attend the trial, that it was not

21   going to delay this case, that her deposition would be

22   videotaped and that is how her testimony would be

23   presented to the jury.

24           So, Your Honor, with all due respect, I think

25   it is time to lift the stay as to both parties, and

1    allow them to get this case ready for a trial, which is

2    going to be upon us very quickly.  I think that is

3    completely consistent with what Judge Huvelle said last

4    Friday.

5            THE COURT:  Well, I'm also hearing, Mr.

6    Oster, that Mr. Kirtland is acknowledging what you have

7    said, that there may be the need to get started with

8    taking depositions earlier than previously anticipated

9    as far as the Defendant is concerned.

10            I would like to get from both of you, as soon

11    as possible, your proposed schedule for future

12    depositions.  Obviously, it would be nice if I could

13    get a joint, agreed-upon schedule, but in the absence

14    of that I'm going to ask each of you to submit your

15    proposed schedule, and then I think we'll have to have

16    another telephone status and try to work something out.

17    Otherwise, I will just set the schedule, and that

18    would --

19            By the way, the schedule should also

20    encompass, since both the discovery in the trust case

21    as well as the shiva case has to be tracking one

22    another at the same time, that you include in that

23    schedule, the depositions for the trust case.

24            MR. HENRY:  Your Honor, --

25            MR. OSTER:  This --

1            MR. HENRY:  Your Honor, this is Bruce Henry.

2            THE COURT:  Yes, Mr. Henry?

3            MR. HENRY:  Obviously, Mr. Smith and I, you

4    know, are going to be filing an answer next week.

5    We're just getting off the ground here, and you said

6    something earlier that caught my attention and that I

7    had not seen, at least in the written record, and I

8    could have overlooked it, and that is the issue of

9    taking depositions for both cases at the same time,

10   which I have to say puts us, I think, in a very unfair

11   position if --

12           THE COURT:  Were you before Judge Huvelle

13   last week, Mr. Henry?

14           MR. HENRY:  Yes, I was.

15           THE COURT:  Well, I --

16           MR. HENRY:  What she said was --

17           THE COURT:  Unless I've misread what Judge

18   Huvelle ordered, having the discovery go jointly, so to

19   speak, I thought was an order of Judge Huvelle.

20           So if -- You say you're not familiar with

21   that?  Oh, I'm sorry -- I'm talking about a status

22   conference with Judge Huvelle back in February of this

23   year.

24           MR. HENRY:  I was not in the case at that

25   time --

1          THE COURT:  Well, I understand that, but at

2    that point she said each deponent will be deposed once

3    for both cases.

4          MR. HENRY:  Well, and --

5          THE COURT:  Now, I will revisit this with

6    Judge Huvelle, but clearly, since she now has a date

7    for the shiva case, and there's no date set for the

8    trust case, and the fact that you are new counsel to

9    this, I will discuss with her, the discovery issue, but

10   I think she may require, but I will confirm, that

11   witnesses who are being deposed, the principals,

12   particularly, who are being deposed for the shiva case

13   should also be deposed for the trust case.

14          Now, I will point out to her that you -- You

15   say there's no answer to the trust case?  It has --

16   It's not -- The issue has not been joined yet?

17          MR. HENRY:  Your Honor, our motion to dismiss

18   the case was denied on last Friday.

19          THE COURT:  I see.

20          MR. HENRY:  So our answer is --

21          THE COURT:  And that was filed prior to any

22   answer?

23          MR. HENRY:  Our answer is due next Friday.

24          THE COURT:  Okay.

25          I will speak to her on that, Mr. Henry.

1          MR. HENRY:  And if I may just articulate my

2     concern.  Obviously, there are a number of witnesses in

3     the shiva case that we simply will not attend.  I mean,

4     the security guards have nothing to do with the trust

5     case, for example.

6          THE COURT:  That's correct.  That's correct.

7          MR. HENRY:  My concern is it would put Mr.

8     Smith to considerable expense to have me attend a

9     deposition of Mr. Feld, for example, about what

10    happened at the shiva, which we have nothing to do

11    with.

12         THE COURT:  Yes.  No, I'm sensitive to that.

13    So why don't we leave that at the moment and I will

14    speak to Judge Huvelle and will discuss the issues with

15    respect to the trust case.

16         Have you been in the case long enough to have

17    a sense as to the number of witnesses that you might be

18    interested in calling or is this too early for that?

19         MR. HENRY:  Well, again, I've been in the

20    case for some time --

21         THE COURT:  Yes, indeed.

22         MR. HENRY:  -- but I think the trust case is

23    a pretty limited case.  I think the parties are going

24    to be the big --

25         THE COURT:  I assumed as much, yes.

1              MR. HENRY:  -- the big issue in the trust

2    case, and I just didn't want to get bogged down in days

3    of deposition testimony from Karen Feld and Kenneth

4    Feld --

5              THE COURT:  No.

6              MR. HENRY:  -- about the shiva that we --

7              THE COURT:  No.  No.  No.

8              MR. HENRY:  -- had nothing to do with.

9              THE COURT:  I don't disagree with you on

10   that.  I think that makes eminently good economic sense

11   on that.

12             So let me get back to you on the issue of the

13   trust case.  I think she may be amenable to cutting you

14   a little slack on the discovery help --

15             MR. HENRY:  Well, excuse me --

16             THE COURT:  -- part of the problem is, of

17   course, the difficulty that the parties have

18   experienced in obtaining deposition time from the

19   principals, which probably will not change, even as the

20   case develops for the trust case.  So, that may be

21   something that Judge Huvelle was thinking about when

22   she made --  issued her order back in February of this

23   year.

24             But rather than pursue that any longer here,

25   because I need to speak to her on it, as to what

1    remains extant in terms of her wishes for the taking of

2    discovery.

3                MR. HENRY:  All right.  Thank you, Your

4    Honor.

5                THE COURT:  All right.

6                MR. KIRTLAND:  Your Honor, this is Mr.

7    Kirtland.

8                THE COURT:  Yes, Mr. Kirtland?

9                MR. KIRTLAND:  Just one brief point.

10                I was also unclear whether, from last

11   Friday's conference, Judge Huvelle still contemplated

12   the cut-offs for discovery in the shiva and the trust

13   case being the same, because she said the trust case is

14   to be tried after the shiva case, and one reason for

15   that was so that -- what Mr. Henry was just saying, to

16   allow Mr. Henry and his client the time --

17                THE COURT:  All right.

18                I will take up that issue with her, because

19   obviously, if I'm talking about what her intent is on

20   discovery, the issue of close of discovery for the

21   trust case will become an issue that we'll discuss.

22   All right?

23                MR. KIRTLAND:  And we propose, Your Honor,

24   what we submitted last night, just that they be

25   staggered by a few months.  That was just one possible

1    solution that we have.

2              THE COURT:  All right.

3              MR. KIRTLAND:  We don't think, as Defendant

4    in both cases, that they need to be the same,

5    necessarily.

6              MR. HENRY:  I agree that it should be

7    staggered, Your Honor.  I mean, Judge Huvelle, I don't

8    have the transcript, but she said something to the

9    effect that since Mr. Smith and I were just --

10             THE COURT:  Who's talking now?  I need that

11    for the record.

12             MR. HENRY:  This is Bruce Henry.

13             THE COURT:  Yes, Mr. Henry.

14             MR. HENRY:  Judge Huvelle, I don't have the

15    transcript, but she said something to the effect that

16    since she was really just bringing Mr. Smith and I in

17    for good, that it would be unfair to put us on the same

18    schedule, kind of as the shiva case.

19             THE COURT:  All right.

20             MR. HENRY:  So, I thought it should be

21    staggered also, and I also believe it should be

22    separate, just so we don't have to go to the expense of

23    attending the shiva stuff.

24             THE COURT:  All right.

25             MR. HENRY:  Thank you.

1          THE COURT:  I know your position on that.

2     All right.

3          With -- So, I'm going to ask both Mr. Oster

4     and Mr. Kirtland to submit to me, obviously sooner

5     rather than later, a -- their proposed schedule for

6     completing fact discovery.

7          Also --

8          MR. KIRTLAND:  Your Honor, this is Mr.

9     Kirtland.

10         THE COURT:  Yeah, I was going to say -- and

11    any expert reports, and things like that.

12         MR. KIRTLAND:  Could I ask a clarifying

13    question, Your Honor?

14         THE COURT:  Yes.

15         MR. KIRTLAND:  Do you mean that we submit to

16    you, a cut-off date, or do you want the actual specific

17    dates of deposition --

18         THE COURT:  Well, I would like, to the extent

19    that you can give me some schedule as to when you're

20    going to be taking depositions.

21         When you talk about a cut-off date, if

22    there's going to be expert testimony with expert

23    reports, then I have to allow time for the expert

24    depositions, if there's more than one deposition, post-

25    discovery of -- fact discovery.

1          I think there's an issue of motions in limine

2     that are going to have to be filed and she's going to

3     have to handle those.

4          You're going to have to prepare a joint

5     pretrial statement.  I hope that can be achieved.

6          So, while the trial date is set for early in

7     May, really, you've lost April, in terms of depositions

8     and discovery, so you're looking essentially at

9     December.

10          Mr. Oster says that he's tied up for

11     certainly part of November, so he may have the first

12     part of November available, and you've got the

13     Christmas break in December, and then you're looking

14     basically at January and February for your discovery,

15     and then March.

16          So you have a lot of depositions to be taking

17     and you both have busy schedules other than the Feld v.

18     Feld case, I assume.

19          MR. OSTER:  Your Honor, can I -- may I add

20     one more item to that plate?  There's the issue of Mr.

21     Feld's being instructed not to answer a number of

22     questions, and given Mr. Feld's schedule, which does

23     not allow him to be available for deposition, you know,

24     except, you know, with a fair amount of notice and on

25     -- as limited -- in limited time frames, when we last

1    discussed this, we were told by the Defendant that they

2    were going to seek a protective order.

3              I would ask that that be taken care of --

4              THE COURT:  A protective order from what, Mr.

5    Oster?

6              MR. OSTER:  Well, he -- the -- Mr. Feld was

7    instructed not to answer on the basis of relevance and

8    on the basis of a -- protective orders that were issued

9    in other cases, I think, and also on behalf of -- based

10   on a settlement agreement.

11             THE COURT:  Well, I can't speak to the

12   protective orders that are --

13             MR. OSTER:  Right.

14             THE COURT:  -- out there, because I don't

15   have them before me, but let me tell you a very simple,

16   basic rule if I'm involved in monitoring discovery,

17   either for my own case or for another judge.  There are

18   two bases for counsel to advise their client that they

19   should not answer the question, very simple, very

20   basic, attorney/client privilege, work product.  That

21   if either of those objections are raised, they may tell

22   their client not to answer and state on the record the

23   basis for their asserting either work product or

24   attorney/client privilege.

25             All other questions, all other questions, if

1    the attorney objects, be it on relevance or anything

2    else, the objection will be noted.  A very brief,

3    brief, that is, no speaking objections that go on

4    forever, very brief statement as to what the basis of

5    the objection is, and then the question must be

6    answered.

7            Either I, subsequently, or the Trial Judge,

8    during the course of the trial, will have the

9    opportunity to revisit the objection and make a

10   determination as to whether or not it should be

11   answered or not.  So that's a blanket instruction.

12           MR. KIRTLAND:  Your Honor, --

13           THE COURT:  It applies to both sides.

14           MR. KIRTLAND:  Your Honor, this is Mr.

15   Kirtland.

16           THE COURT:  Yes, Mr. Kirtland?

17           MR. KIRTLAND:  Just we agree with that

18   principle; however, there are certain extreme

19   circumstances where questions can be objected to

20   because of undue burden, oppression, harassment under

21   Rule 26, and so, I think consistent with what I said at

22   the August 13th hearing, at this -- on this issue, we

23   will move for a protective order on the issues that we

24   objected, there's also an issue of another protective

25   order in a prior case, and then we'll just seek your

1   guidance from a ruling from Your Honor.

2         THE COURT:  If you have that issue arise

3   during the course of a deposition, I will, and I'm not

4   soliciting you calling me, but if I am available during

5   the course of the deposition, you should call me and

6   see if I am available and I will try to resolve the

7   issue then and there.  But that should be for a good

8   cause basis.  Other than that, my ruling holds.

9         To the extent that you're going to file a

10  protective order, I don't know what it contains, but

11  you certainly have a right to file a protective order.

12        MR. KIRTLAND:  Thank you, Your Honor.

13        MR. OSTER:  And that was the only point, Your

14  Honor.  I think this issue -- I mean, unless the

15  instruction is going to be abandoned but, I mean, I've

16  inferred from what Mr. Kirtland just said that --

17        THE COURT:  No, well I've given the

18  parameters, so to speak.  So, why don't we --

19        Yes.  So any other questions?

20        MR. KIRTLAND:  Your Honor, Mr. Kirtland.

21        So, just to make sure I understand what you

22  would like us to do, I will caucus with Mr. Oster and

23  we will give you a proposed cut-off for fact discovery,

24  for submission of expert reports, for completion of

25  expert discovery, as well as any other steps required

1    before the pretrial conference, and then we will

2    involve Mr. Henry in the same exercise on the trust, or

3    should we wait for you on the trust side?

4            THE COURT:  I think in fairness to all of

5    you, it would make good sense for me to try to speak to

6    Judge Huvelle promptly, like today or certainly early

7    part of next week.  I don't know what her schedule is.

8    I'm going to be criminal but I'll have time to chat

9    with her, to at least find out what her current views

10   are, in terms of the discovery in both cases, tracking

11   one another with the same dates.

12           So, I can't give you an answer to that, so my

13   sense is why don't you hold off on that, certainly, as

14   you go through your preparation of a proposed

15   scheduling order.  I know that discussions between

16   Counsel have been difficult lo these past couple of

17   years, but it seems to me you're now heading into the

18   final run into a trial, it would make good sense for

19   you to try to work cooperatively, with sensitivity to

20   each of your schedules, and also to getting this done.

21           The tit-for-tat that's been going on for

22   many, many months now, it seems to me, should come to

23   an end.  You both have work to do and a responsibility

24   to your clients to present the case in the best face,

25   so to speak, as they can, and get it done before the

1     pretrial conference.

2              So, how long would it need -- will you need

3     to prepare something like this scheduling order?

4              MR. KIRTLAND:  I think, Your Honor, for

5     Defendants, just putting in agreed cut-off dates for

6     fact expert and expert reports, I mean, I -- we put in

7     -- I circulated yesterday, proposed dates, so we

8     haven't had the -- Mr. Oster hasn't had an opportunity

9     to respond to that, but I think we could put it in by,

10    I would think Monday, or Tuesday at the latest.

11             THE COURT:  All right.

12             Mr. Oster, how --

13             MR. OSTER:  I think that Tuesday would be

14    fine.  I'm just -- I'm out of town on Monday, but I

15    have their proposal, and frankly, you know, except for

16    just a couple of issues that really have to do with how

17    long things are going to take, and I doubt there's

18    going to be any dispute about it, I think we should be

19    able to do that.

20             THE COURT:  Good.  All right.

21             MR. OSTER:  I would say Tuesday.

22             THE COURT:  Yes.

23             MR. OSTER:  And then, when would Your Honor

24    like the list of deponents?

25             THE COURT:  Well, I would -- to the extent

1  that you can identify them, I would like them as soon

2  as practicable, also.

3          MR. OSTER:  Okay.

4          MR. KIRTLAND:  Your Honor, Mr. Kirtland, --

5          THE COURT:  Yes.

6          MR. KIRTLAND:  -- just one point on that.

7          The parties submitted, in late July, a joint

8  motion to modify scheduling order --

9          THE COURT:  Right.

10          MR. KIRTLAND:  -- and (unintelligible)

11  motion.

12          THE COURT:  And now you've reached that point

13  where you're being granted that request.

14          MR. KIRTLAND:  Okay.  We'll, I'm just saying

15  we had a limited list of deponents there.

16          THE COURT:  Oh, I see, I see.

17          MR. KIRTLAND:  We could resubmit that.

18          THE COURT:  Yes, okay.  No, no, no, I'm aware

19  of both lists, I think.  Yes.

20          And that stands, Mr. Kirtland, from

21  Defendant's standpoint?

22          MR. KIRTLAND:  Yes, and we'll just --

23          THE COURT:  All right.

24          MR. KIRTLAND:  -- note objections to

25  depositions as they come up.

1          THE COURT:  So, looking down my list here

2     that I have before me, in terms of what's pending,

3     Plaintiff's motion for protective order with respect to

4     Ms. Feld, to prevent her from traveling, I'm leaving in

5     abeyance, mainly because it may well be moot within the

6     next couple of weeks.

7          Similarly, Defendant's motion for an IME,

8     I've addressed that issue.

9          Plaintiff's motion for relief to file a

10    surreply with respect to the IME for Karen Feld, if --

11    Mr. Oster, if you want to file a pleading, that's okay,

12    but I think based upon what the Court said, I don't

13    know whether you want to do that.  I'll that up to you.

14    If the answer is yes, generating more paperwork.

15         If you file a surreply, it should contain

16    arguments that have not been made previously in the

17    other pleadings that you've made with respect to the

18    same issue.

19         Defendant's motion for a protective order in

20    the trust case regarding sensitive business documents,

21    I've got that motion under advisement and I will rule

22    on that, as well as the -- and the protective order,

23    and so I'll make a decision on that sooner rather than

24    later.

25         Clearly, as Mr. Henry indicated, they're just

1   getting started in the case, so there is not a dire

2   rush to do that, but I certainly will try to get that

3   out within the next week or so.

4            All right.

5            Anything else, Counsel, before we adjourn?

6            MR. HENRY:  Excuse me, Your Honor.  This is

7   Bruce Henry.

8            THE COURT:  Yes?

9            MR. HENRY:  So counsel are to defer our

10  discussions about a scheduling order in the trust case

11  until you've had a chance to --

12           THE COURT:  Yes.

13           MR. HENRY:  -- speak with Judge Huvelle?

14           THE COURT:  And I will set up a status

15  hearing, Mr. Henry, including you and obviously both

16  Mr. Oster and Mr. Kirtland, with respect to the trust

17  case.

18           MR. HENRY:  All right.  Thank you, Your

19  Honor.

20           THE COURT:  all right.  Thank you, Counsel.

21           MR. HENRY:  Thank you, Your Honor.  All

22  right, thank you.

23           MR. OSTER:  Thank you, Judge.

24       (Proceedings concluded at 11:09 a.m.)

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____          December 31, 2010

STEPHEN C. BOWLES